IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JODIE RAY,<br><br>      **Plaintiff,**<br><br>v.<br><br>**CORE CARRIER CORPORATION and SHARKEY TRANSPORTATION, INC.,**<br><br>      **Defendants.** | Case No. 20-CV-02448-JAR-TJJ |

### MEMORANDUM AND ORDER

Plaintiff Jodie Ray filed this action against Defendants Core Carrier Corporation ("Core Carrier") and Sharkey Transportation, Inc. ("Sharkey") on September 14, 2020, bringing claims for sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Kansas Act Against Discrimination ("KAAD"), K.S.A. § 44-1001 *et seq.*, as well as a claim for wrongful termination in violation of Kansas public policy. This matter is now before the Court on Defendants' Partial Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 12) and Plaintiff's Motion for Leave to Amend and File Second Amended Complaint (Doc. 33). The motions are fully briefed, and the Court is prepared to rule. For the reasons set forth in detail below, Defendants' partial motion to dismiss or for summary judgment is granted, and Plaintiff's motion for leave to amend is granted in part and denied in part.

**I.    Procedural Background**

Plaintiff contends that although she was employed by Core Carrier, Defendants formed an integrated enterprise such that both may be held liable as her employer for discrimination. On November 23, 2020, Defendants filed a partial motion to dismiss or for summary judgment,

seeking the dismissal of Plaintiff's claims against Sharkey on the basis that: (1) Sharkey is a separate and distinct entity from Core Carrier and, therefore, cannot be held liable as Plaintiff's integrated employer; and (2) Plaintiff did not exhaust her administrative remedies as to Sharkey with respect to her Title VII and KAAD claims.  Defendants also moved to dismiss Plaintiff's claim against both Core Carrier and Sharkey for wrongful termination in violation of public policy on the basis that: (1) she has failed to allege the elements of such a claim under Kansas law; and (2) the claim is precluded because, under the alternative remedy doctrine, Plaintiff already has an adequate remedy under Title VII and the KAAD.

On December 28, 2020, Plaintiff filed a Motion to Strike Defendants' partial motion to dismiss or for summary judgment, along with a response to Defendants' motion to be considered in the event that the Court denied her motion to strike.[1]  In her response, Plaintiff also requested leave to amend her wrongful termination claim.

On February 3, 2021, the Court issued an Order ("February 3 Order") in which it construed Plaintiff's motion to strike as a motion for additional time to respond to Defendants' motion for summary judgment under Fed. R. Civ. P. 56(d), but denied that motion without prejudice for failure to make the showing required by the rule.[2]  The Court also denied without prejudice Plaintiff's request for leave to amend her wrongful termination claim because Plaintiff had not filed a formal motion or provided the proposed amendment as required under the local rule.[3]  The Court permitted Plaintiff until February 24, 2021 to file any Rule 56(d) motion and/or

---

[1] Docs. 15, 16.

[2] Doc. 32 at 5, 8.

[3] *Id.* at 7−8.

motion to amend her Complaint, and deferred ruling on Defendants' dispositive motion until any such motions by Plaintiff were resolved.[4]

Plaintiff did not file a motion for additional time to respond to Defendants' partial motion for summary judgment under Rule 56(d).  On February 23, 2021, Plaintiff did file a motion for leave to amend her complaint, with the proposed amendment attached as required by D. Kan. Rule 15.1.  Plaintiff seeks leave to amend to drop her claim for wrongful termination in violation of public policy as to both Defendants; her allegations are otherwise unchanged.  Defendants do not oppose Plaintiff's proposed amendment with respect to Core Carrier but do oppose the motion with respect to Sharkey on the basis that amendment would be futile because Sharkey remains an improper defendant.

## II. Defendants' Partial Motion to Dismiss, or in the Alternative, Motion for Summary Judgment

### A. Legal Standard

Defendants move to dismiss Plaintiff's claims against Sharkey or, in the alternative, for partial summary judgment as to those claims.  Under Fed. R. Civ. P. 12(d), "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Because Defendants rely on evidence outside the pleadings, specifically the affidavits of Core Carrier's Controller and Sharkey's President, the Court considers Defendants' alternative motion for partial summary judgment.  Plaintiff filed a response to Defendants' motion on December 14, 2020.  As noted above, she did not file a motion for additional time to respond to Defendants' motion under Rule 56(d), as permitted by the Court in its February 3 Order, and the Court therefore decides Defendants' motion on the basis of the briefing on file.

---

[4] *Id.*

Summary judgment is appropriate only if the moving party demonstrates "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[5] In applying this standard, the Court views the evidence in the light most favorable to the nonmoving party.[6] "There is no genuine [dispute] of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[7] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[8] A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[9]

The moving party initially must show the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law.[10] In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial need not negate the nonmovant's claim; rather, the movant need simply point out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.[11] Where the moving party also bears the

---

[5] Fed. R. Civ. P. 56(a).

[6] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010) (citing *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1210 (10th Cir. 2008)).

[7] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)).

[8] *Wright ex rel. Tr. Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[9] *Adler*, 144 F.3d at 670 (citing *Anderson*, 477 U.S. at 248).

[10] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[11] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

burden of proof at trial, the moving party must demonstrate that "no reasonable trier of fact could find other than for the moving party."[12]

Once the movant has met the initial burden of showing the absence of a genuine dispute of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[13] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[14] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[15] In setting forth these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[16] To successfully oppose summary judgment, the nonmovant must bring forward "more than a mere scintilla of evidence" in support of its position.[17] A nonmovant "cannot create a genuine issue of material fact with unsupported, conclusory allegations."[18]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"[19]

---

[12] *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015) (emphasis omitted) (quoting *Calderone v United States*, 799 F.2d 254, 259 (6th Cir. 1986)).

[13] *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[14] *Anderson*, 477 U.S. at 256; *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[15] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 670–71; *see also Kannady*, 590 F.3d at 1169.

[16] *Adler*, 144 F.3d at 671.

[17] *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993).

[18] *Tapia v. City of Albuquerque*, 170 F. App'x 529, 533 (10th Cir. 2006) (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004)).

[19] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

B.     **Evidentiary Objections**

As a preliminary matter, Defendants challenge Plaintiff's attempt to controvert certain facts, through her affidavit and documents attached to her response, on the basis that she lacks personal knowledge and/or that the documents on which she relies are unauthenticated. Some of Defendants' objections lack merit, while others are well-taken.

Contrary to Defendants' assertion, "[a]s long as an affidavit is 'based upon personal knowledge and set[s] forth facts that would be admissible in evidence,' such averment of a party is legally competent to oppose summary judgment, notwithstanding its inherently self-serving nature."[20] "Under the personal knowledge standard, an affidavit is inadmissible if 'the witness could not have actually perceived or observed that which he testifies to.'"[21] Thus, an affidavit "asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge,"[22] meaning that the affiant must "affirmatively set forth the bases upon which [he or she] relies . . . in making the statements asserted."[23] However, Rule 56(c)(4)'s

---

[20] *Williams v. Shields*, 77 F. App'x 501, 503 (10th Cir. 2003) (internal citation omitted) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (reversing summary judgment for defendant where plaintiff's affidavit concerning the date of his release from jail, which was based on personal knowledge, conflicted with defendant's electronic evidence of release date); *see also* Fed. R. Civ. P. 56(c)(4) (stating that supporting and opposing affidavits shall be made on personal knowledge).

[21] *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (quoting *United States v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir. 1997)); *see also Ney v. City of Hoisington*, 508 F. Supp. 2d 877, 883 (D. Kan. 2007) (citing *Argo*, 452 F.3d at 1200), *aff'd*, 264 F. App'x 678 (10th Cir. 2008).

[22] *Guinan v. Boehringer Ingelheim Vetmedica, Inc.*, 803 F. Supp. 2d 984, 992 (N.D. Iowa 2011) (quoting *El Deeb v. Univ. of Minn.*, 60 F.3d 423, 428 (8th Cir. 1995)).

[23] *Glenn v. Proctor & Gamble Co.*, No. 07-4144-EFM, 2009 WL 10688943, at *11 (D. Kan. Sept. 10, 2009); *see also Hansen v. PT Bank Negara Indonesia (Persero)*, 706 F.3d 1244, 1250–51 (10th Cir. 2013) (finding district court did not err in excluding declaration that failed to explain how declarant had personal knowledge of the matters asserted); *Alexander v. Kellogg USA, Inc.*, 674 F. App'x 496, 499 (6th Cir. 2017) (stating that the party offering the affidavit bears the burden of "show[ing] circumstances indicating the [affiant] has based the statement on personal knowledge") (second alteration in original) (quoting *Gaskey v. Fulton Bellows, LLC*, No. 3:05-CV-540, 2007 WL 869621, at *3 (E.D. Tenn. Mar. 20, 2007))).

"requirements of personal knowledge and competence to testify may be inferred if it is clear from the context of the affidavit that the affiant is testifying from personal knowledge."[24]

The Court finds that Plaintiff's personal knowledge and competence to testify to some of the statements set forth in her affidavit fairly may be inferred from her role as Core Carrier's Payroll and Human Resources Manager.  For example, in that role, Plaintiff would have personal knowledge of Core Carrier's personnel policies, employee training, payroll processing, and interviewing and hiring practices.  Although Defendants offer affidavits to the contrary, it is not for the Court to weigh the credibility of conflicting evidence at the summary judgment stage.  Rather, "[a]ll evidence must be considered in [P]laintiff['s] favor at th[e] summary judgment stage . . . and it is for the jury to weigh any conflicting evidence."[25]

However, the Court cannot similarly infer that Plaintiff would have personal knowledge regarding matters such as Core Carrier's office furniture acquisition, rent and utility payment arrangements, or the technical aspects of its computer software system.  Because Plaintiff does not provide adequate factual support to show how she possesses this knowledge, her statements on such topics are inadmissible.

Finally, the Court rejects Defendants' objections to documents attached to Plaintiff's response.  Plaintiff relies on printouts from the websites of multiple secretaries of state and the Wyandotte County Appraiser to controvert Defendants' assertions regarding their maintenance

---

[24] *Told v. Tig Premier Ins. Co.*, 149 F. App'x 722, 725 (10th Cir. 2005) (citing *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990)); *see also Riggs v. City of Owensville*, No. 4:10-CV-793 CAS, 2011 WL 1743691, at *2 (E.D. Mo. May 4, 2011) ("'In some instances, courts will infer personal knowledge from the content or context of a statement in an affidavit,' where the content or context support an inference that it reflects the affiant's personal knowledge." (quoting *Brooks v. Tri-Systems, Inc*., 425 F.3d 1109, 1111–12 (8th Cir. 2005))).

[25] *Bain v. Platinum Realty, LLC*, No. 16-2326-JWL, 2018 WL 862770, at *3 (D. Kan. Feb. 14, 2018); *see also, e.g.*, *Davis v. Seiter*, No. 96-3316-KHV, 1998 WL 404354, at *8 (D. Kan. June 30, 1998) (stating that material factual disputes cannot be resolved based on conflicting affidavits and that the court must view the evidence in the light most favorable to the party opposing summary judgment).

of separate offices.[26] Defendants argue that while Fed. R. Evid. 902 provides that certain evidence may be self-authenticating, and Rule 902(4) provides for self-authentication of a public record if the copy is certified, the documents on which Plaintiff relies are not admissible because they are not certified copies. However, government websites are self-authenticating under Fed. R. Evid. 902(5).[27] Thus, the Court considers Plaintiff's factual statements based on self-authenticating exhibits.

### C.     Uncontroverted Facts

The following material facts are either uncontroverted or viewed in the light most favorable to Plaintiff.

Plaintiff is a resident of Missouri. Core Carrier and Sharkey are both owned, operated, and financially controlled by the same individual, Jack Sharkey. Core Carrier operates its principal place of business in Kansas City, Kansas, at a building owned by 1020 Sunshine Road, Inc. The mailing address for 1020 Sunshine Road, Inc. is listed under Jack Sharkey in Quincy, Illinois on the Kansas Secretary of State's website.[28] Core Carrier and Sharkey maintain separate offices, and each makes its own rent payments on its respective office. Sharkey's principal place of business is in Quincy, Illinois.

Core Carrier and Sharkey also maintain separate and distinct corporate books, financial records, and bank accounts. Neither has access to, or authority over, the other's bank accounts, and each files its own state and federal tax returns. Core Carrier and Sharkey each purchase their

---

[26] Docs. 16-2, 16-3, 16-4.

[27] *See, e.g.*, *Haines v. Home Depot U.S.A., Inc.*, No. 1:10-cv-01763, 2012 WL 1143648, at *8 (E.D. Cal. Apr. 4, 2012) ("Federal courts consider records from government websites to be self-authenticating under Rule 902(5)." (citations omitted)); *Assoc. Indem. Corp. v. Small*, No. 06-00187-CV-W-REL, 2008 WL 11338112, at *12 (W.D. Mo. Feb. 20, 2008) (collecting cases).

[28] Doc. 16-4.

own office supplies, and the two entities do not share office furniture or equipment.  Each company also pays for its own electricity, water, solid waste disposal, and sales tax.

Further, Core Carrier and Sharkey maintain separate payroll records.  While Plaintiff was employed by Core Carrier, the company's payroll was processed by a third-party entity and an independent certified public accountant.  While Sharkey hired the third-party payroll vendor, Core Carrier paid for its own payroll processing services.  Core Carrier and Sharkey each have their own separate and distinct employer identification number, and neither has authority to use the other's identification number.  While Core Carrier had no employee manual for office employees as of March 2019, Core Carrier and Sharkey each have their own employee policies and procedures.  Core Carrier does not participate in any employment decisions regarding Sharkey employees.  However, Core Carrier and Sharkey jointly interview individuals who apply to be truck drivers at Core Carrier.  At least three managers or directors at Core Carrier are (or were at the time of Plaintiff's employment) also employed by Sharkey, including Jack Sharkey.

Core Carrier and Sharkey share a computer software system, but the two companies "do not maintain a system, policy, or practice giving general access to each other's files or documents, whether electronically or otherwise."[29]  Sharkey provides information technology ("IT") services to Core Carrier employees.  The IT helpdesk email address for Core Carrier is helpdesk@shke.com, and @shke.com is the domain address for all Sharkey email accounts.  Further, Core Carrier's telephone lines are redirected to Sharkey every evening at approximately 5 p.m. when Core Carrier's receptionist leaves the office.  Finally, Core Carrier sends its recruiters to be trained at Sharkey.

---

[29] Second Winkler Aff., Doc. 22-1 ¶ 9.

On or about August 13, 2018, Core Carrier hired Plaintiff to work in its Human Resources ("HR") Department as the Payroll and Human Resources Manager. Upon her hiring, Plaintiff signed documents acknowledging that she read and understood certain Core Carrier policies. At no time was Plaintiff an employee of Sharkey, and Sharkey has no employment paperwork on Plaintiff, which is required for all Sharkey employees. Plaintiff did not complete any HR responsibilities for Sharkey.

On April 23, 2019, Plaintiff filed a Charge of Discrimination with the Missouri Commission on Human Rights and the U.S. Equal Employment Opportunity Commission naming Core Carrier and "[Erin] Winkler, Mark Phillips, et al." as the parties who discriminated against her.[30] Plaintiff's Charge did not name or mention Sharkey or its owner, Jack Sharkey.

### D.    Discussion

To be liable under Title VII and the KAAD, a defendant must be the plaintiff's "employer."[31] Defendants argue that Plaintiff cannot maintain her claims against Sharkey because "Sharkey never employed Plaintiff, nor did Sharkey ever take any action, discriminatory or otherwise, with respect to her employment."[32] Defendants contend that although Plaintiff attempts to sidestep these facts by arguing that Core Carrier and Sharkey together constitute an "integrated enterprise," the Tenth Circuit factors to be considered when determining whether two companies are so integrated indicate that they are not. Plaintiff agrees that the "integrated

---

[30] Doc. 9-4. Plaintiff's Charge names "Aaron" Winkler, but per Winkler's Affidavits, Docs. 13-1 and 22-1, the correct spelling appears to be "Erin."

[31] *See* 42 U.S.C. § 2000e-2; K.S.A. § 44-1009; *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1361 (10th Cir. 1993) (stating that prima facie Title VII case requires plaintiff to prove that defendant was his or her employer); *Nixon v. Nw. Mut. Life Ins. Co.*, 58 F. Supp. 2d 1269, 1274 n.2 (D. Kan. 1999) (applying same employer analysis for Title VII and KAAD claims).

[32] Doc. 13 at 6.

enterprise" test is applicable to the facts of this case to determine whether Sharkey can be held liable as Plaintiff's employer.[33]

The integrated enterprise test requires a court to weigh four factors: "(1) interrelations of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control."[34] Centralized control of labor relations is "an important factor."[35] To survive summary judgment on her claims against Sharkey, Plaintiff must present evidence that a reasonable jury could conclude that Sharkey and Core Carrier "share[d] or codetermine[d] those matters governing the essential terms and conditions of [Plaintiff's] employment."[36]

Regarding the first factor,

> courts have found interrelated operations based on (1) evidence that a parent kept a subsidiary's books, issued its paychecks and paid its bills, (2) evidence that the parent and subsidiary had common employees, the same headquarters, and common advertising and that the parent rented its properties to the subsidiary, and (3) evidence that the parent and subsidiary shared services, equipment, employees and office space and the parent controlled the subsidiary's payroll and benefit program.[37]

---

[33] "[C]ourts have applied . . . different tests to determine whether a parent corporation is liable for the acts of its subsidiary," and the Tenth Circuit has declined to adopt a single test from among them. *Frank*, 3 F.3d at 1362 (footnote omitted); *see also Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1225−26 (10th Cir. 2014). Although neither party here indicates whether Core Carrier is a subsidiary of Sharkey, these "tests have been applied to closely-related entities other than parents and subsidiaries." *Jenney v. Kini L.C.*, No. 97-2590-KHV, 1998 WL 400087, at *3 (D. Kan. July 7, 1998) (citing *Walker v. Toolpushers Supply Co.*, 955 F. Supp. 1377, 1381 (D. Wyo. 1997)). Because the parties concur that the "integrated enterprise" test should apply, the Court utilizes that test and does not discuss the others.

[34] *Sandoval v. City of Boulder*, 388 F.3d 1312, 1322 (10th Cir. 2004).

[35] *Frank*, 3 F.3d at 1363 (quoting *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090 (10th Cir. 1991)).

[36] *Knitter*, 758 F.3d at 1228 (first and second alterations in original) (quoting *Bristol v. Bd. of Cnty. Comm'rs*, 312 F.3d 1213, 1218 (10th Cir. 2002)) (citing *Lockard v. Pizza Hut*, 162 F.3d 1062, 1069 (10th Cir. 1998)).

[37] *Rowland v. Franklin Career Servs., LLC*, 272 F. Supp. 2d 1188, 1201 (D. Kan. 2003) (internal citations omitted).

Many of the factors delineated above are absent here. There is no evidence that Sharkey and Core Carrier are involved in each other's bookkeeping, payroll systems, benefit systems, or bill payment. There is no allegation or evidence that the two companies share non-management employees, nor do they share headquarters, with Core Carrier based in Kansas and Sharkey based in Illinois. Although Plaintiff argues that the companies share offices because they are commonly owned by Jack Sharkey, there is no evidence that Sharkey Transportation, the corporation, rents its properties to Core Carrier. There is no evidence that Core Carrier and Sharkey share equipment. However, the companies do share a software system, IT support, and some telephone-answering services, and Core Carrier's recruiters are trained at Sharkey. On balance, the Court finds that this factor weighs against finding that Core Carrier and Sharkey are an "integrated enterprise."[38]

With respect to the second factor, common management, there is not a specific amount of overlap that is required to find an integrated enterprise, although there must be more than one common manager.[39] Here, at least three manager or director-level employees at Core Carrier are (or were) also employed by Sharkey, including Jack Sharkey, who owns both companies. However, Plaintiff does not offer evidence of who the two individuals other than Sharkey are, nor does she offer evidence of the roles of Sharkey and the others within each company. Although Plaintiff makes arguments regarding the roles of these individuals in her briefing, she does not identify the facts on which she relies by citing to affidavits, deposition transcripts, or exhibits as required to oppose summary judgment. Without additional evidence regarding whether and how these employees were involved in the management of both companies, this

---

[38] *See Florez v. Holly Corp.*, 154 F. App'x 708, 709 (10th Cir. 2005) (agreeing with district court finding that "[plaintiff's] contention that [the parent corporation] provided administrative support to [its subsidiary] is too vague to be given much weight").

[39] *Frank*, 3 F.3d at 1364.

factor also weighs in favor of finding that Core Carrier and Sharkey are not an "integrated enterprise."[40]

In evaluating the third factor, centralized control of labor relations, "[t]he critical question is, '[w]hat entity made the final decisions regarding employment matters *related to the person claiming discrimination?*'"[41]  "To satisfy the control prong, a parent must control the day-to-day employment decisions of the subsidiary."[42]  While Plaintiff points out that Sharkey and Core Carrier jointly interview applicants for truck driver positions, this evidence alone is insufficient to show that Sharkey controlled the routine employment decisions of Core Carrier, particularly those relating to Plaintiff's position in HR.  Plaintiff offers no evidence that Sharkey made final (or any) decisions regarding the conditions or termination of her employment.  The Court finds that this "highly determinative"[43] factor weighs in favor of finding that the "integrated enterprise" test is not met here.

Finally, with respect to the fourth factor, there is clearly common ownership here: Core Carrier and Sharkey are both owned by Jack Sharkey.  However, this factor alone in insufficient to establish Sharkey's liability, and the other three factors are in Sharkey's favor.[44]

---

[40] *See, e.g.*, *Sandoval v. City of Boulder*, 388 F.3d 1312, 1322 (10th Cir. 2004) (noting that circumstances of common management may include "identical or heavily overlapping officer ranks or boards of directors, and common presidents" (citing *Frank*, 3 F.3d at 1364)); *see also Lockard*, 162 F.3d at 1071 (finding evidence of some common management insufficient to satisfy common management requirement); *Rowland*, 272 F. Supp. 2d at 1203 (stating that common management may exist "where a common president controlled personnel management of both companies, and the companies had other common officers"; "where parent and subsidiary had [the] same officers, directors and president"; "where the same family consulted often on business matters and headed both parent and subsidiary"; and "where parent and subsidiary had identical list of officers and directors" (citations omitted)).

[41] *Frank*, 3 F.3d at 1363 (second alteration in original) (emphasis added) (quoting *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983)).

[42] *Id.* (citations omitted).

[43] *Bristol v. Bd. of Cnty. Comm'rs*, 312 F.3d 1213, 1220 (10th Cir. 2002).

[44] *Frank*, 3 F.3d at 1364 (citing *Wood v. S. Bell Tel. & Tel. Co.*, 725 F. Supp. 1244, 1249 (N.D. Ga. 1989)); *Glover v. Heart of Am. Mgmt. Co.*, 38 F. Supp. 2d 881, 891 (D. Kan. 1999) (citation omitted).

Given the balance of all four factors, the Court finds that Plaintiff has failed to establish that Sharkey qualifies as her employer under the "integrated enterprise" test for the purposes of her Title VII and KAAD claims. This test requires "that there be sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer."[45] Such indicia are lacking here. Plaintiff chose not to file a motion for additional time to respond to Defendants' motion for partial summary judgment under Fed. R. Civ. P. 56(d), and as the record stands, the Court must grant Defendants' motion for summary judgment on Plaintiff's claims against Sharkey. The Court therefore need not examine the question of whether Plaintiff has exhausted her administrative remedies as to Sharkey.

### III.     Plaintiff's Motion for Leave to Amend

Under Fed. R. Civ. P. Rule 15(a), leave to amend a complaint is freely given when justice so requires.[46] A party is typically granted leave to amend under this rule unless there is "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendment previously allowed, or futility of amendment."[47]

Again, Defendants do not oppose Plaintiff's proposed amendment with respect to Core Carrier to drop her claim for wrongful termination in violation of public policy. However, Defendants argue that leave to amend should be denied as to Sharkey because the proposed amendment is futile. Plaintiff's proposed amendment eliminates only her wrongful termination claim but would still assert Title VII and KAAD claims against both Defendants. Because the

---

[45] *Glover*, 38 F. Supp. 2d at 891 (quoting *Lockard*, 162 F.3d at 1070).

[46] Fed. R. Civ. P. 15(a)(2).

[47] *Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005) (quoting *Frank*, 3 F.3d at 1365).

Court grants summary judgment for Sharkey on Plaintiff's Title VII and KAAD claims on the basis that Sharkey was not Plaintiff's employer, amendment as to Sharkey would indeed be futile. Accordingly, Plaintiff's motion to amend her complaint is granted as to Core Carrier but denied as to Sharkey.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Partial Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 12) is **granted**, and Plaintiff's claims against Sharkey are **dismissed with prejudice**. Plaintiff's Motion for Leave to Amend and File Second Amended Complaint (Doc. 33) is **granted in part and denied in part**. Plaintiff is granted leave to file her Second Amended Complaint as to Core Carrier only. Plaintiff shall file her Second Amended Complaint forthwith.

**IT IS SO ORDERED.**

Dated: March 30, 2021

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE